### BRANSFIELD *v*. WALLACE.

1. APPEAL AND ERROR—EJECTMENT—FINDINGS OF COURT—AMEND-MENTS—IMMATERIALITY.

> In an action of ejectment, tried before the court without a jury, it was not error for the court to reject a proposed amendment to the findings of fact that was neither material nor controlling.

2. SAME—FINDINGS OF COURT—PRESUMPTIONS—EVIDENCE—REVIEW.

> In such action, where the finding of the court was based upon a plat made by the government's surveyor, which is presumed to be correct, and which there was evidence to sustain, it not being within the province of this court to weigh the evidence *pro* and *con*, the finding of the court will not be reversed.

Error to Muskegon; Sullivan, J. Submitted October 17, 1916. (Docket No. 81.) Decided March 29, 1917.

Ejectment by Redmond Bransfield against Thomas O. Wallace and another to recover the possession of certain real property, before the court without a jury. Judgment for defendants. Plaintiff brings error. Affirmed.

*Bolton & Moriarty* and *Carpenter & Jackson,* for appellant.

*Cross, Vanderwerp, Foote & Ross,* for appellees.

STONE, J. This is an action of ejectment to recover the possession of lots 1 and 2 of section 2, town 11 N., range 16 W., being in the county of Muskegon, Mich. The case is brought to this court by the plaintiff upon writ of error to the circuit court for the county of

Muskegon, where it was tried by the court without a jury. Written findings of fact and conclusions of law were filed, and a judgment was entered for the defendants.

The plaintiff is the owner in fee simple, by patent from the United States bearing date August 30, 1909, of the premises above described. The defendants are the owners of lot 3 of the same section. The land in issue was surveyed by the United States government in 1837. This record does not show when the United States conveyed lot 3. The findings of fact and conclusions of law of the trial court were as follows:

"Findings of Fact.

"I. Plaintiff is the owner in fee of lots 1 and 2 of section 2, town 11 N., range 16 W., having acquired title thereto by patent from the government of the United States of date August 30, 1909, wherein the lands conveyed are described as follows:

'Lots one and two of section two in township eleven north of range sixteen west of the Michigan meridian, Michigan, containing one hundred one and twenty-four hundredths acres, according to the official plat of the survey of said lands returned to the General Land Office by the Surveyor General.'

"II. Defendant is the owner of lot 3 of said section 2, town 11 N., range 16 W.

"III. A reference to the government plat shows that all of the upland on said lots 1 and 2 lies north of an inland lake (Twin Lake), which is shown by the government plat to extend both easterly and westerly across and beyond what would ordinarily be described as the N. E. ¼ of said section 2; and said lot 3 is shown to embrace all of the upland on said quarter section abutting upon the south side of said lake.

"IV. Lot 4 of said section 2 lies immediately west of said lots 2 and 3.

"V. According to the government plat, said lot 4 has an easterly frontage on said inland lake, but at the present time the waters of said lake have so receded that the western end of said lake is some rods

east of the north and south quarter line, which forms the dividing line between lot 2 and said lot 4, although there are yet remaining physical evidences that the lake at one time extended westerly of said north and south quarter line.

"VI. No part of said lots 1 and 2 are shown by the government plat to include any lands south of the lake, or beyond the center of the lake. The government plat shows that said lot 3 embraces all the land bordering upon the south side of the lake directly opposite said lots 1 and 2 bordering the lake on the north.

"VII. The real controversy in this case is over 3½ acres of land in the southwest corner of the whole quarter section had the section not been fractional, and 3.33 acres of land in the south central part of said quarter section had the section not been fractional. Plaintiff claims that lots 1 and 2 include all the land and water that would be embraced if the lines of his property were so extended as to make the description thereof the N. E. ¼ of said section 2, and that to reach the south boundary thereof he may extend the lines of his subdivisions into and across the entire width of the lake, thereby excluding defendants from the water frontage of said lot 3 as shown by the government plat, and can claim and hold as his own the property in dispute, although the same, as shown by the government plat, is a part of said lot 3.

"VIII. The property really in dispute is no part of either said lot 1 or said lot 2, but is a part of said lot 3, and plaintiff has no right, title, or interest therein.

"From all the testimony admitted in said cause, I find the facts as above stated, and I find as conclusion of law that plaintiff has no cause of action against said defendants.

"Let judgment, therefore, be entered for the defendants, with costs to be taxed."

Plaintiff's Exhibit 2, appearing in the record following page 44, is hereto attached. It is claimed by the plaintiff that it shows the conditions when he purchased. It is as follows:

PLAINTIFF'S EXHIBIT 2.

The real controversy is as to the ownership of the 3.36 acres lying south of the middle of the lake, and the 3½ acres in the southwest corner of said Exhibit 2.

The government plat being a part of plaintiff's Exhibit 4, and found in the record at page 51, is also attached, and is as follows;

PLAINTIFF'S EXHIBIT 4.

Exceptions to the findings were duly filed by the plaintiff, and numerous amendments were proposed, but refused by the court, all of which appear by reference to the assignments of error.

By the first assignment of error it is claimed that the court erred in refusing to find as follows:

"A reference to the government plat shows that all of the upland on lots 1 and 2 lies north of an inland lake (Twin Lake), which is shown by the government plat to extend easterly and westerly across and beyond what would ordinarily be described as the N. E. ¼ of said section 2; and also to extend southerly beyond said quarter section and upon the S. E. ¼ of said section; that said lot 3 is shown to be entirely on the S. E. ¼ of said section, and abutting on the south of said lake."

(2) That the court erred in refusing to find as proposed, as follows:

"According to the government plat said lot 4 has an easterly frontage on said inland lake, but it is evident that a mistake was made by the surveyor in making the said plat, and the westerly line of said lake did not extend to the west line of the said N. E. ¼ of section 2."

(3) That the court erred in refusing to find, as requested, as follows:

"The north and south quarter line is the dividing line between lots 2 and 4, and is the west boundary line of said lot 2. At the time the patent was issued to the plaintiff, to wit, the 30th day of August, 1909, the said lake did not extend to the north and south quarter line, and lot 2 then embraced all the upland lying between the north and south quarter line and the lake, and north of the east and west quarter line which forms the dividing line between the N. E. ¼ and the S. E. ¼ of said section 2, including the 3½ acres of land, or thereabout in the southwest corner of the northeast quarter mentioned above."

(4) That the court erred in refusing to find, as requested, as follows:

"The real controversy in this case is over 3½ acres of land in the southwest corner of the N. E. ¼ of said section 2 and 3.33 acres of land in the south central part of said quarter section. Plaintiff claims that lots 1 and 2 include all the land and water that would be embraced if the lines of lots 1 and 2 were extended to the east and west quarter line forming the southern boundary of the N. E. ¼ of said section 2."

(5) That the court erred in refusing to find, as requested, the following:

"Said lots 1 and 2 embraceᴏ and now embrace the 3.33 acres of land or thereabout, being a part of said N. E. ¼ lying south of said lake, and the same are not a part of said lot 3."

(6) That the court erred in refusing to find, as requested, as follows:

"Conclusion of law: The plaintiff is the owner of all that part of the N. E. ¼ of section 2 * * * described as follows: The 3½ acres of land in the southwest corner of said northeast quarter lying north of the east and west quarter line and west of the lake, being a part of lot 2 of said section 2. He is also the owner of 3.33 acres of land in the south central part of said N. E. ¼, being all the upland, bounded on the south by the east and west quarter line and on the east, north and west by the lake, and being a part of lots 1 and 2 of said section 2. That at the time this suit was begun, the defendant was in possession thereof, and that he unlawfully withholds the same from the plaintiff, and that the plaintiff should have judgment therefor."

The remaining assignments of error are to the effect that the court erred in its several findings and conclusions as filed.

The plaintiff introduced in evidence as part of his case, which was received without objection, the following letter:

"DEPARTMENT OF THE INTERIOR, UNITED STATES LAND
"OFFICE.
                 "MARQUETTE, MICHIGAN, Sept. 16, 1912.
"REDMOND BRANSFIELD,
   "Twin Lake,
      "Michigan.
"*Dear Sir:*
   "Referring to yours of the 13th inst. According
to the plats of this office lots one and two of sec. 2,
T. 11 N, R 16 W, cover all the land in the N. E. ¼ of
said section. In fact said lands cover from the north-
ern boundary line of the township in N. E. ¼ to the
water edge on the south.
                     "Yours truly,
                     "THOMAS H. DAWSON, Receiver."

1. We are of the opinion that the first assignment
of error does not raise any controlling question. The
proposed amendment merely referred to the govern-
ment plat which was in evidence. That part of the
proposed finding relating to lot 3 was neither material
nor controlling. The court was concerned or interest-
ed with lots 1 and 2, and not with lot 3.

2. We do not think that there was evidence suffi-
cient to warrant the court in finding as a fact that a
mistake was made by the government's surveyor in
making the government plat. At least there was evi-
dence to the contrary, and upon this record we are
not required or permitted to weigh the evidence *pro*
and *con.* We may say that the presumption is that
no mistake was made.

3. We do not think that this proposed finding is con-
trolling. While the meander lines of the government
plat might not be controlling in case an error was
shown in the original survey, yet in the absence of such
showing the lines will be presumed to be correct. The
communication from the Receiver of the United States
Land Office, written three years after plaintiff's pat-
ent, is to the effect that "said lands cover from the
northern boundary line of the township in N. E. ¼

to the water edge on the south." This excludes the idea that lots 1 and 2 embraced any lands south of the lake.

4. This proposed finding as to the claim of the plaintiff was wholly immaterial, and the assignment raises no question of law.

5. This proposed amendment raises the whole question involved, and the court's finding upon the subject finds support in the evidence.

6. In our opinion the court did not err in refusing to find as requested upon the law of the case.

The property in question was conveyed by the government not as fractional parts of the N. E. ¼ of section 2, but as lots 1 and 2 of that section. There is nothing in the record to indicate that the government intended to convey any land south of the lake, but the evidence and the presumption of law indicate the contrary, and that no mistake was made. But it is said that the plaintiff is short in his acreage; that is not a controlling consideration. If we were to give him all he claims in the case, he would still be short in acreage.

Many legal propositions are discussed by plaintiff's counsel, but in our opinion none of them is decisive of the instant case. The dates and contents of the patents of lots 3 and 4 might throw some light upon the case, but the record is silent upon the subject. In any view of the case presented by this record, we think the trial court reached the correct conclusion, and the judgment below is affirmed.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.